UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| IN RE: | |
| DEWAYNE ANTHONY POYNTER | CASE NO.: 10-11608(1)(7) |
| _____Debtor_____ | |
| GREAT AMERICAN INSURANCE COMPANY | AP NO.: 11-1003 |
| Plaintiff | |
| vs. | |
| DEWAYNE ANTHONY POYNTER | |
| _____Defendant_____ | |

**<u>MEMORANDUM-OPINION</u>**

This matter is before the Court on the Motion for Summary Judgment of the Plaintiff Great American Insurance Company ("GAIC") against Defendant/Debtor Dewayne Anthony Poynter ("Debtor"). The Court considered the Motion and Memorandum of Law of GAIC, the Response to GAIC's Motion by Debtor, the Reply of GAIC and the comments of counsel for the parties at the hearing held on the matter. For the following reasons, the Court will enter the attached Order granting summary judgment in favor of GAIC.

## UNDISPUTED FACTS

Debtor was the sole owner of Poynter Construction, the predecessor to Poynter Homes, a construction company primarily engaged in the construction of residences. Poynter Construction engaged in the building of commercial buildings. As a builder of commercial buildings on public projects, Poynter was required to obtain payment and performance bonds in order to enter into contracts on public commercial projects.

GAIC provided performance and payment bonds on public construction projects. In 2007, Debtor and GAIC entered into an Agreement of Indemnity ("AOI") in order to induce GAIC to act as the surety for the principal, Poynter Construction. (A copy of the AOI is attached to the Affidavit of Mark McDaniel filed in an action in the United States District Court and included in this record as Exhibit A to GAIC's Motion.) The pertinent terms of the AOI are set forth verbatim in the supporting legal memoranda of the parties and referenced herein as needed.

In the fourth paragraph of the AOI, the Debtor specifically agreed:

FOURTH: Undersigned covenant and agree that all funds received by them, or due under any contract covered by any Bond are trust funds whether in the possession of the Undersigned or another, for the benefit of all parties to whom the Undersigned incurs obligations in the performance of the contract covered by the Bond(s) and/or for the benefit of, payment to or reimbursement of the Surety for any liability, loss or expense the Surety may incur under the Bond(s) or in enforcing this Agreement. . . . .

In November 2007, Debtor was notified by GAIC that in order to write bonds for Poynter Construction, the company needed to be capitalized in the amount of at least

$200,000. Debtor agreed and provided GAIC with financial statements for the year ending December 31, 2007, which indicated Poynter Construction had been capitalized in the amount of $471,196. In reliance on this, GAIC agreed to write bonds for the Barren/Metcalfe County EMS Project.

In the fall of 2008, an interim financial statement provided to GAIC by Debtor showed that Poynter had paid out capital of $469,171 drastically reducing the capital of Poynter Construction. Therefore, GAIC demanded that Debtor put $500,000 into the construction company to capitalize and fund bonded contracts. In reliance on Debtor's assurances that this had been done, GAIC wrote bonds for the City of Oak Grove Project.

In December 2008, in response to Debtor's statements regarding Poynter Construction's bonding requirements for 2009, GAIC demanded that Poynter Construction have capital of no less than $1 million. On December 31, 2008, Debtor wrote a check for a loan of $1 million to the construction company. These funds were provided by PBI Bank of Glasgow from a $1 million loan to Debtor. The loan had a maturity date of January 26, 2010. In reliance on Debtor's representations regarding the loan and the company's financial statements, GAIC wrote bonds on the Caverna Independent School Project.

GAIC had no knowledge that in fact, the $1 million loan from PBI was never released by the Bank and was placed in a blocked account. On January 20, 2009, the loan was repaid by Debtor to PBI prior to its maturity date and in violation of GAIC's agreement with Debtor regarding capitalization of Poynter Construction.

On October 20, 2009, Poynter Construction notified GAIC that it was unable to complete the Barren/Metcalfe County EMS, City of Oak Grove and Caverna Independent School Projects.  GAIC incurred the following losses under the Bonds on the projects: $7,001.00 Barren/Metcalfe County EMS, $644,071.01 City of Oak Grove, $145.908.50 Caverna Independent Schools for a total of $796,980.51.  GAIC also incurred attorneys' fees and costs of $43,646.18.  GAIC ultimately recovered $196,716 of unpaid contract funds for a total loss of $600,210.01.

The business records of Poynter Construction established that it received payments of $2,502,209 under the three bonded projects.  Instead of holding the payments in trust for the job creditors, Poynter Construction used $1,351,788.45 of those funds for payments to Poynter Homes and PBI Bank.

On October 22, 2010, Debtor filed its Voluntary Petition seeking relief under Chapter 7 of the United States Bankruptcy Code.

On January 18, 2011, GAIC instituted this adversary proceeding against Debtor to have the debt declared nondischargeable under 11 U.S.C. §523(a)(4).

**LEGAL ANALYSIS**

GAIC seeks summary judgment in its favor declaring the debt nondischargeable under 11 U.S.C. §523(a)(2) and (a)(4).[1]

Under Section 523(a)(4) of Title 11,

> A discharge under Section 727 . . . of this Title does not discharge the individual debtor from any debt – –
>
> . . . . .
>
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny;

The term "defalcation" as used in the statute "refers to a failure to produce funds entrusted to a fiduciary and applies to conduct which does not necessarily reach the level of 'fraud' or 'embezzlement, or misappropriation' . . . ". *In re Sigler*, 196 B.R. 762, 764 (Bankr. W.D. Ky. 1996); *In re Smith*, 238 B.R. 664 (W.D. Bankr. Ky. 1999). The term is extremely broad, but it includes any failure to properly account for funds entrusted to a fiduciary. *Id.*; *In re Garver*, 116 F.3d 176, 179-80 (6th Cir. 1997).

In order to prove a claim under §523(a)(4), the defalcation must involve an express or technical trust relationship arising from placement of a specific res in the hands of the debtor. *Garver*, 116 F.3d at 180. To succeed on its claim herein, GAIC must prove: (1) the existence of a trust, either expressed or statutory; (2) the debtor owed a fiduciary obligation

---

[1] GAIC seeks summary judgment under both Sections of the Code, but its Complaint only raised a claim under (a)(4). The Court will only consider the (a)(4) claim.

with relation to the trust; (3) the debtor breached his or her fiduciary duty by either misappropriating the trust res or simply failing, intentionally or unintentionally, to properly account for the trust res. *In re Smith*, 238 B.R. at 670. The undisputed facts herein closely track those of *In re Smith* and successfully establish a violation of 11 U.S.C. §523(a)(4).

The first element is the existence of a trust. Under Kentucky law, an express trust is proven by: (1) an express intent to create a trust; (2) an ascertainable res; (3) a sufficiently certain beneficiary, and (4) a trustee who administers the res for the benefit of the beneficiary. *Frazier v. Hudson*, 279 Ky. 334, 130 S.W.2d 809, 810 (1939).

The relevant provisions of the AOI, meet these four elements. Paragraph 4 clearly provides the funds received under the bonded contracts are "trust funds." The trust *res* is ascertainable as the AOI refers to it as the funds received by the Debtor under the contract covered by the bonds. The beneficiaries are delineated in the AOI as the "parties to whom the Undersigned incurs obligations in the performance of the contract covered by the Bond and/or for the benefit of, payment to or reimbursement of the Surety for any liability or loss . . . " This is sufficiently certain as required by the Sixth Circuit in *Federal Insurance Company v. Fifth Third Bank*, 867 F.2d 330, 334 (6th Cir. 1989). Finally, the AOI designates the indemnitors as the Trustee. *Id.* Accordingly, all four elements necessary to create a trust are present.

There also is no doubt that GAIC proved under the undisputed facts that the Debtor owed a fiduciary obligation to the trust created under the AOI. The existence of a fiduciary

relationship is determined by federal law.  *In re Blaszak*, 397 F.3d 386 (6th Cir. 2005).  The term "fiduciary capacity" is more narrowly construed for purposes of §523(a)(4) than in other circumstances.  In the context of §523(a)(4), courts have held that the term applies to trustees who misappropriate funds held in trust, not to those who fail to meet an obligation under a common law fiduciary relationship.  *Id*.  Under the circumstances presented, the Debtor was a fiduciary for purposes of 11 U.S.C. §523(a)(4).

It is also clear that Debtor breached his fiduciary duty my misappropriating a portion of the trust res.  Under §523(a)(4) this may be proven by an intentional or unintentional failure to account for the trust res. *Garver*, 116 F.3d at 180.  This was evidenced by Debtor's misappropriation of the trust res, which consisted of funds received under the bonded contracts which were paid to PBI Bank and Debtor's former company Poynter Homes, instead of the job creditors and GAIC.  GAIC has successfully established each of the elements of its §523(a)(4) claim.

Debtor agrees that there are no facts in dispute.  Debtor, however, contends that the AOI required the Debtor to open trust accounts and deposit the funds therein.  Debtor claims GAIC's failure to demand that Debtor open such an account establishes a failure of this condition precedent .  As in *Smith*, this was not a condition precedent, but merely gave GAIC the option of requiring the opening of such an account.

Further, Debtor contends that no trust was created because no bonds were in existence at the time the AOI was signed.  According to Debtor, under *Acuity*, *a Mut. Ins.*

*Co. v. Planters Bank, Inc.*, 362 F.Supp.2d 885 (W.D. Ky. 2005), no trust was created because of the absence of an ascertainable res.

The facts of the *Acuity* case are different from the undisputed facts presented here. In *Acuity*, the general contractor had an established line of credit with a bank. The bank had the legal right to set off funds in the general contractor's account under the terms of the line of credit. Progress payments on a bonded project went into this account and were set off by the bank. The general contractor defaulted on payments to job creditors and the bonding company or surety was required to make payments to these parties. In an action by the surety against the bank seeking resolution of the conflict between the surety's rights of subrogation and the bank's rights as the general contractor's creditor, Judge Heyburn determined that under the terms of the General Indemnity Agreement the general contractor intended to create a trust for the benefit of its subcontractors. However, this did not establish that the progress payments were held in trust. The Court determined that there was a failure of the trust theory due to the "absence of a coincidence between the existence of a trust res and declaration of intent." The surety in the *Acuity* case could not impose a trust obligation vis-a-vis the bank on funds in the contractor's bank account where the bank had a legal right to setoff those funds. There was no analogous right to setoff on the progress payments in Debtor's account.

In this case, the AOI terms were clear and set forth the parties' intent to create a trust. This action is solely between the parties of the AOI. Further, the res was identifiable

and ascertainable under both *Smith* and the *Federal Insurance Company* case. Payments made to Poynter Construction under the bonded contracts constituted the res of the trust. The terms here are similar to those approved by the Sixth Circuit in the *Federal Insurance Company* case and this Court in the *Smith* case. The facts of *Acuity* are distinguishable from those in the matter at bar.

The undisputed facts herein warrant entry of summary judgment in GAIC's favor on its Complaint against Debtor under 11 U.S.C. §523(a)(4). The debt owed by Poynter to GAIC is proven in the amount of $600,210.01 which represents the amounts paid out by GAIC under the Bonds and its attorney's fees, all due to Debtor's defalcation of the trust funds. Accordingly, the debt is nondischargeable under 11 U.S.C. 523(a)(4).

## **CONCLUSION**

For all of the above reasons, the Court will **GRANT** the Motion for Summary Judgment of Plaintiff Great American Insurance Company on its Complaint against Defendant/Debtor Dewayne Anthony Poynter.

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

| | |
|---|---|
| IN RE: | |
| DEWAYNE ANTHONY POYNTER | CASE NO.: 10-11608(1)(7) |
| _____Debtor_____ | |
| GREAT AMERICAN INSURANCE COMPANY | AP NO.: 11-1003 |
| Plaintiff | |
| vs. | |
| DEWAYNE ANTHONY POYNTER | |
| _____Defendant_____ | |

## ORDER

Pursuant to the Memorandum-Opinion entered this date and incorporated herein by reference,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that Plaintiff Great American Insurance Company ("GAIC") is entitled to summary judgment as a matter of law on its Complaint against Defendant/Debtor Dewayne Anthony Poynter ("Debtor"). The debt owed

by Debtor to GAIC in the amount of $600,210.01 is declared nondischargeable pursuant to

11 U.S.C. §523(a)(4).

This is a final and appealable Order. There is no just reason for delay.